Johnson, J., dissenting: As the trier of the facts who heard the testimony in this case I cannot agree with the conclusion reached in the majority opinion that in the transaction here the sellers were paid $50 per share for their covenant not to compete and that same constituted a separate item of the transaction. True, the recital in the contract so states, but the evidence and record as a whole proves the falsity of this statement. On the contrary it clearly appears from the evidence that the owners sold the stock coupled with an agreement not to compete for a lump sum of $200 per share. The buyers and sellers had so agreed and a written contract to that effect was prepared and signed by all of the sellers and tendered to the buyers for their signatures, whereupon Hoiles, acting for the buyers, said “the contract was satisfactory”, but asked whether the sellers “to help the buyers tax-wise” would have any objection to an additional clause evaluating the agreement not to compete at $50 a share and the stock at $150 a share. The sellers, unaware of its tax consequences or monetary detriment to them, with practically no discussion or consideration, agreed to its inclusion and Hoiles, well versed in income tax liability based upon his experience in the purchase of many newspapers, wrote the additional paragraph to the contract which constitutes the basis of respondent’s contention and upon which the majority opinion is based. That the recitals in this added paragraph do not accurately or correctly reflect the facts or the consideration of the transaction but are window-dressing inserted for income tax purposes only is apparent from the record. In support of this conclusion we cite: (1) The circumstances under which it was inserted, the reasons therefor and lack of consideration given thereto all tend to discredit its probative value and stamp its provisions as being other than bona fide and realistic. (2) It is the only evidence in the record that a separate value was placed upon the stock and the agreement not to compete. In the negotiations covering several months, discussion as to the price to be paid was always on overall figure. (3) It is in conflict with all other evidence in the record that the value of the stock was $150 per share, and the record as a whole impeaches this valuation as being a sum far below either its real, market, or profit-earning value. (4) Except for Hoiles’ unsupported testimony at the hearing to that effect, it is the only evidence that the agreement not to compete was of the value of $50 a share. Measured by the evidence as a whole, this value magnifies out of all proportion the value, if any, possessed by the noncompetitive agreement of the sellers. Nowels was the only one of the sellers whose training and experience might cause him to compete, and before consummation of the sale, Hoiles had employed him by written contract to work for the buyers. Recitals of a written instrument as to the consideration are not conclusive and it is always competent to show by parol or other extrinsic evidence what the real consideration was. Haverty Realty & Investment Co., 3 T. C. 161. Tax consequences from the sale of property depend upon the substance and actuality of the transaction rather than the form or recited consideration in the contract. Commissioner v. Court Holding Co., 324 U. S. 331. As was said by the Supreme Court in this case: * * * To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress. Believing that petitioners have sustained their contention that no part of the consideration was separately paid for the covenant not to compete and accordingly none of same was ordinary income, I therefore respectfully dissent. Turner and Withey, JJ., agree with this dissent.